UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

EVERETT VINSON,

        Petitioner,            CIVIL ACTION
                                      NO. 01-CV-10290-BC

v.

BARRY McLEMORE, Warden,        DISTRICT JUDGE DAVID M. LAWSON
                                      MAGISTRATE JUDGE CHARLES BINDER

        Respondent.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
## ON PETITION FOR WRIT OF HABEAS CORPUS
(Dkt. 3)

I.     **RECOMMENDATION**

       For the reasons set forth below, **IT IS RECOMMENDED** that the Petition for Writ

of Habeas Corpus be **DENIED** and the case be **DISMISSED WITH PREJUDICE.**

II.    **REPORT**

       **A. Introduction**

       Pending, pursuant to an Order of Reference from United States District Judge David

Lawson (Dkt. 11), is Everett Vinson's Petition for Writ of Habeas Corpus, which was filed

on August 16, 2001.  (Dkt. 3.)  On January 23, 2003, the petition was referred to the

undersigned Magistrate Judge for appointment of counsel, an evidentiary hearing on Petitioner's ineffective assistance of trial counsel claim, and a Report and Recommendation. (Dkt. 16.) The Federal Defender's Office was appointed to represent Petitioner, and the hearing was held on September 4, 2003. Subsequent to receipt of the hearing transcript, counsel for both Petitioner and Respondent filed post-hearing briefs. (Dkts. 30 & 33.) Accordingly, the case is ready for Report and Recommendation.

### B.     Factual Background

Petitioner's conviction arises out of the stabbing of Artie Embry in the early morning hours of November 25, 1995. The previous evening, Petitioner, Sheila Evans, and Artie Embry had celebrated Sheila Evans's birthday. They had all consumed "a nice little piece to drink." (Trial Tr. Vol. II at 136.) Sheila and Artie fell asleep on the couch in the living room, and Petitioner went upstairs to sleep. Sheila's three children (approximate ages 16, 19, and 24) were also in the house. Sometime early the next morning, Sheila awoke to the sound of Petitioner coming down the stairs. She testified at trial that Petitioner came over to the couch, pulled a knife out of his pants, and began stabbing Artie Embry, who was drunk and asleep next to her. When Sheila screamed for help, her older son Andre came to the room and pulled Petitioner off Artie, who was bleeding from cuts to the head and neck. When the police arrived, Petitioner and Andre were still struggling. A butcher knife was found on the floor in an adjoining room. Artie and Petitioner were both taken to the hospital, as Petitioner also had injuries in the form of cuts on his right cheek, left palm, and back of left hand. Petitioner was arrested and charged with assault with intent to commit murder.

2

A jury trial was conducted in the Calhoun County Circuit Court in May 1996, which ended in a hung jury. A second trial was commenced in August 1996, and this jury found Petitioner guilty of assault with intent to commit murder. The Presentence Investigation Report recommended that Petitioner be sentenced to a term of not less than fifteen years and not more than twenty-five years. (Rule 5 Mat., Presentence Invest. Report of Aug. 30, 1996; attached to Brief filed with Mich. Sup. Ct. on Oct. 20, 1998.) Petitioner's sentencing took place on September 5, 1996. According to the transcript, Calhoun County Circuit Judge Allen Garbrecht stated:

> As you know, the guidelines range from 10 to 25 years and the recommendation by probation was a sentence of 15 years. I think, quite frankly, given all the circumstances of this case and your circumstances, that, number one, a sentence within the guidelines is appropriate. And number two, I think the recommendation specifically within that range of recommended guidelines is appropriate. And I'm going to sentence you accordingly.

> I'm ordering that you remain within the custody of the Michigan Department of Corrections for a period of not less than five, no more than 25 years with credit for 284 days served to this point.

(Rule 5 Mat., Sentence Trans. at 7-8.) The written judgment, however, stated that the sentence was fifteen to twenty-five years.

## C.   Post-Conviction Procedural History

Petitioner appealed his conviction to the Michigan Court of Appeals, presenting the following claims:

I.   The prosecutor failed to present constitutionally sufficient evidence to support the conviction for assault with intent to murder, where Mr. Vinson's intoxication negated the specific intent element.

3

II.      Defendant was denied the constitutional rights to due process and the effective assistance of counsel where, among other things, his attorney failed to raise material defenses, namely, intoxication and diminished capacity, and where defendant was induced to reject a favorable plea offer as a result of counsel's inaccurate advice.

III.      Substantial prosecutorial misconduct denied defendant a fair trial.

(Rule 5 Mat., Brief on Appeal dated July 18, 1997.) Petitioner also filed a motion to remand to the trial court for an evidentiary hearing regarding his ineffective assistance of counsel claim.

The Michigan Court of Appeals denied the motion to remand on December 2, 1997, and nine months later affirmed Petitioner's conviction in a two-page unpublished opinion. (Rule 5 Mat., *People v. Vinson*, No. 198432 (Mich. Ct. App. Sept. 4, 1998).)

Petitioner filed a delayed application for leave to appeal with the Michigan Supreme Court, presenting the same claims presented on direct review. The Michigan Supreme Court denied leave to appeal, stating that it was "not persuaded that the questions presented should be reviewed by this Court." (Rule 5 Mat., *People v. Vinson*, No. 113326 (Mich. May 25, 1999).)

Thereafter, Petitioner filed a motion for relief from judgment in the trial court, presenting the following claim:

I.      Defendant was denied his 14th Amendment right to due process when the trial judge sentenced him to five to twenty-five years in prison in open court and wrote fifteen to twenty-five years on the defendant's judgment of commitment order.

The trial court denied the motion. (Rule 5 Mat., *People v. Vinson*, No. 95-3526 FC (Calhoun County Court, Sept. 13, 1999).)

4

Petitioner then filed a delayed application for leave to appeal to the Michigan Court of Appeals, presenting the same claim presented to the trial court in his motion for relief from judgment. The Michigan Court of Appeals denied leave to appeal "for failure to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." (Rule 5 Mat., *People v. Vinson*, No. 223389 (Mich. Ct. App. July 11, 2000).)

Petitioner next filed a delayed application for leave to appeal to the Michigan Supreme Court, presenting the same claim presented to the trial court. The Michigan Supreme Court likewise denied leave to appeal, stating that the defendant had "failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." (Rule 5 Mat., *People v. Vinson*, No. 117558 (Mich. Feb. 26, 2001).)

Thereafter, Petitioner filed the pending petition for a writ of habeas corpus in this Court, presenting the following claims for relief:

I. Petitioner's 15 to 25 year sentence is constitutionally invalid, where it was imposed in absentia after the pronouncement of a valid 5 to 25 year sentence.

II. Petitioner's conviction is constitutionally infirm, where it was obtained without sufficient evidence to establish the requisite *mens rea*.

III. Petitioner was denied the right to due process and to effective assistance of counsel, where counsel failed to raise material defenses and induced Petitioner to reject a favorable plea offer from prosecution.

IV. Petitioner was denied a fair trial where the prosecutor engaged in substantial misconduct during closing arguments.

(Pet., Dkt. 3 at 5.)

### D.   Law and Analysis

### 1.   Standard of Review & Governing Law

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), govern this case because

Petitioner filed his habeas petition after the effective date of the AEDPA. *See Lindh v.*

*Murphy,* 521 U.S. 320, 117 S. Ct. 2059, 2063, 138 L. Ed. 2d 481 (1997).

The AEDPA altered the standard of review that a federal court must use when

reviewing applications for the writ of habeas corpus. *See Felker v. Turpin,* 518 U.S. 651, 116

S. Ct. 2333, 2335, 135 L. Ed. 2d 827 (1996); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir.

1997). The new standard of review provides that:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of
> the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The statute's amended standard of review gave rise to different interpretations among

the circuits until the United States Supreme Court illuminated its meaning. In *Williams v.*

*Taylor,* 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000), the Court held that a state

court decision is "contrary to" Supreme Court precedent "if the state court arrives at a

6

conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at a different result. *Id.* at 1519. Additionally, a state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or if the state court either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 1520. The state court decision, however, need not cite Supreme Court precedent, or even reflect awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (per curiam).

The AEDPA's standard of review applies when a federal court reaches the merits of a habeas petition's claims. However, there are procedural hurdles that a habeas petitioner must overcome before a federal court can reach the merits. As a general rule, a state prisoner seeking federal habeas relief must first exhaust his available state court remedies. *Hannah v. Conley*, 49 F.3d 1193, 1195 (6th Cir. 1995). Exhaustion requires that a prisoner "fairly present" the substance of each federal constitutional claim to the state courts using citations to the United States Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns. *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.1993). The claim presented in the habeas petition must be the "substantial equivalent" of the claim presented to the state. *Picard v. Connor*, 404 U.S. 270,

7

278, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971). State prisoners in Michigan must raise each claim in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief. *Dombkowski v. Johnson*, 488 F.2d 68, 70 (6th Cir. 1973). The exhaustion requirement was codified by the enactment of the AEDPA, which states that the writ of habeas corpus "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A).

A habeas petition containing both exhausted and unexhausted claims, which is known as a "mixed petition," should be dismissed in its entirety absent exceptional or unusual circumstances. *O'Guinn v. Dutton*, 88 F.3d 1409, 1412 (6th Cir. 1996) (citing *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982)). Following such dismissal, a petitioner may either file a new petition raising only his exhausted claims or return to state court and exhaust his remedies before refiling the complete petition in federal court. However, under the AEDPA, a district court also has the discretion to take a more drastic step and deny a petition in its entirety on the merits, notwithstanding the failure of the applicant to exhaust his available state remedies. 28 U.S.C. § 2254(b)(2).

### 2.     Petitioner's First Claim: Sentencing Error

Petitioner's first claim is that his sentence is constitutionally invalid because the trial court verbally sentenced him to "not less than five, nor more than 25 years . . . in prison," (Rule 5 Mat., Sentence Hrng. Tr. of Sept. 5, 1996, at 8), and then entered a sentence of 15 to 25 years on the written judgment and commitment form. (Pet., Dkt. 3 at 7.)

8

This claim was not raised in Petitioner's direct appeal, but rather was raised for the first time in Petitioner's motion for relief from judgment, which was denied. The Michigan appellate courts refused to address the claim on appeal, stating that Petitioner had failed to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D).[1] Accordingly, Respondent asserts that the claim is barred from federal habeas review by the doctrine of procedural default. The United States Supreme Court has explained the doctrine by stating that

---

[1]That court rule states:

The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion

> (1) seeks relief from a judgment of conviction and sentence that still is subject to challenge on appeal pursuant to subchapter 7.200 or subchapter 7.300;
>
> (2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;
>
> (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
>
>> (a) good cause for failure to raise such grounds on appeal or in the prior motion, and
>>
>> (b) actual prejudice from the alleged irregularities that support the claim for relief. As used in this subrule, "actual prejudice" means that,
>>
>>> (i) in a conviction following a trial, but for the alleged error, the defendant would have had a reasonably likely chance of acquittal;
>>> (ii) in a conviction entered on a plea of guilty, guilty but mentally ill, or nolo contendere, the defect in the proceedings was such that it renders the plea an involuntary one to a degree that it would be manifestly unjust to allow the conviction to stand;
>>> (iii) in any case, the irregularity was so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand regardless of its effect on the outcome of the case;
>>> (iv) in the case of a challenge to the sentence, the sentence is invalid.
>>
> The court may waive the "good cause" requirement of subrule (D)(3)(a) if it concludes that there is a significant possibility that the defendant is innocent of the crime.

MICH. CT. RULE 6.508(D).

[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991).

The Sixth Circuit has set forth a four-part test for determining whether a prisoner's claim is procedurally defaulted and therefore barred from habeas review. *See Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986); *Cooey v. Coyle*, 289 F.3d 882, 897 (6th Cir. 2002). First, the federal habeas court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with that rule. *Maupin*, 785 F.2d at 138. Second, the court must determine whether the procedural sanction was actually enforced by the state courts – that is, whether the state courts actually based their decisions on the procedural rule. *Id.*

In this case, these two prongs of the four-pronged *Maupin* test are satisfied. First, under Michigan law, a defendant who raises new claims in a motion for relief from judgment must demonstrate "good cause" for failure to have raised the grounds for relief on appeal and "actual prejudice" therefrom, which in the case of a challenge to a sentence means showing that the sentence is invalid. MICH. CT. RULE 6.508(D)(3)(a)-(b)(iv). Second, we know that the state courts actually based their decisions on the rule, because both appellate courts denied Petitioner's motions for leave to appeal by explicitly holding that Petitioner had failed to establish entitlement to relief under Rule 6.508(D).

10

Third, the federal court must consider whether the procedural rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim. *Maupin*, 785 F.2d at 138. The Sixth Circuit has previously held that an identically-worded judgment was based on an independent and adequate state procedural rule. *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000). Thus, a state court's reference to Michigan Court Rule 6.508(D) provides a proper basis for finding that a state procedural bar prevents federal habeas review. *Id. See also Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002) ("[t]hough the ruling was brief and did not explicitly reference M.C.R. 6.508(D)(3), we determined that the Michigan Supreme Court's statement explained its order" and therefore habeas review was barred).

The fourth prong provides that, if the above three factors are met, which they are in this instance, the Court may still excuse the default and address the merits of the claim if the petitioner can demonstrate that there was cause for him to not follow the state's procedural rule and that he was actually prejudiced by the alleged constitutional error. *Maupin*, 785 F.2d at 138. It is the petitioner's burden to demonstrate both cause and prejudice. *Simpson*, 238 F.3d at 408. In this case, Petitioner makes no attempt to demonstrate cause. Instead, he claims that he was not required to satisfy the cause provision of the court rule. (Pet., Dkt. 3 at 8.) The basis for this argument appears to stem from a misreading of the court rule, wherein Petitioner fails to recognize that both cause *and* prejudice must be shown. MICH. CT. RULE 6.508(D)(3)(a)-(b) (must show "good cause for failure to raise such grounds on appeal . . . **and** . . . actual prejudice"). In fact, when a petitioner fails to establish cause to

11

excuse a procedural default, a court does not even need to address the issue of prejudice, as both are required. *Smith v. Murray*, 477 U.S. 527, 533, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). In this case, Petitioner has not even attempted to meet his burden of demonstrating cause for his state court procedural default, and therefore his claim is barred from review unless he can show that a miscarriage of justice would result from failure to address the merits of the claim.

The miscarriage of justice exception applies when a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995); *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). To demonstrate a fundamental miscarriage of justice, a petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup,* 513 U.S. at 324. In this case, Petitioner has not presented new reliable evidence to support a claim of actual innocence, and I therefore suggest that, pursuant to the doctrine of procedural default, this claim is foreclosed from habeas review.

### 3.    Petitioner's Second Claim: Insufficient Evidence

Petitioner next claims that the evidence adduced at trial was insufficient to sustain his conviction for assault with intent to commit murder.

a.    **State Court Record**

This claim was presented to the Michigan Court of Appeals in Petitioner's direct

appeal. The state appellate court ruled on the claims as follows:

> There is no merit to defendant's claim that the prosecutor failed to present sufficient evidence to support defendant's conviction for assault with intent to murder. In reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v. Wolfe*, 440 Mich 508, 515, 489 NW2d 748, amended 441 Mich 1201 (1992). Here, defendant contends that because the prosecution witnesses were not credible, the evidence was therefore insufficient to support the verdict. However the credibility of the witnesses is irrelevant to the determination of sufficiency. Here, there was eyewitness testimony that defendant went into a silverware drawer after the household was asleep and then stabbed the sleeping victim several times before being restrained by witnesses. This evidence is sufficient to sustain defendant's conviction.

> Defendant also contends that despite this evidence, defendant's intoxication negates the specific intent element and that the jury should have been so instructed. A failure to instruct on a point of law is not grounds for setting aside a verdict if the defendant has failed to specifically request the instruction, MCL 768.29; MSA 28.1052, and manifest injustice will not be found where the alleged error or omission is not outcome determinative. *People v. McVay*, 135 Mich App 617, 618, 354 NW2d 281 (1984).

> Intoxication is only a defense in cases where "the facts of the case could allow the jury to conclude that the defendant's intoxication was so great that the defendant was unable to form the necessary intent." *People v. Mills*, 450 Mich 61, 82, 537 NW2d 909 (1995). Here, there was evidence that defendant had been drinking, but no evidence that defendant was "intoxicated to the point at which he was incapable of forming the intent to commit the crime." *Id*. 83. There was evidence that defendant, who acknowledges on appeal that he is a chronic alcohol user, stopped drinking around midnight. Several hours later, defendant came down the stairs and went into the kitchen silverware drawer for a knife, before stabbing the sleeping victim at about 5:00 a.m. Viewing the evidence in a light most favorable to the prosecution, a rational jury could infer from defendant's actions that he was able to form the requisite intent.

(Rule 5 Mat., *People v. Vinson*, No. 198432, at 1-2 (Mich Ct. App. Sept. 4, 1998) (unpublished per curiam).)

### b.   Discussion

When a habeas petitioner raises a claim that the evidence upon which he was convicted was insufficient, the United States Supreme Court case of *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed.2d 560 (1979), provides the applicable federal law. In *Jackson*, the Court held that the U.S. Constitution prohibits criminal convictions except upon proof of guilt beyond a reasonable doubt. *Id.* at 309 (citing *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)). A reviewing court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citing *Woodby v. INS*, 385 U.S. 276, 282, 87 S. Ct. 483, 17 L. Ed. 2d 362 (1966)). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

In this case, although the Michigan Court of Appeals did not explicitly cite the *Jackson* case in its opinion, it correctly identified and articulated *Jackson's* "rational trier of fact" standard. Therefore, applying the AEDPA standard of review, this Court's role is to determine whether the Michigan court's application of the *Jackson* standard was objectively reasonable. *See Martinez v. Johnson*, 255 F.3d 229, 245 (5th Cir. 2001); *Gomez v. Acevedo*, 106 F.3d 192 (7th Cir. 1997).

14

The crime charged in this case consisted of three elements: (1) that Petitioner "tried to physically injure another person"; (2) that when he "committed the assault, he had the ability to cause an injury or at least believed that he had the ability"; and (3) that he "intended to kill the person he assaulted." (Trial Tr. Vol. III at 37.) A review of the trial transcript reveals that Sheila Evans testified to witnessing the incident. That night, she was asleep on the couch next to Artie Embry. Her son, Andre Evans, was in his bedroom, and Petitioner was upstairs. They had all had "a nice little piece to drink" earlier that evening in celebration of her birthday. (Vol. II at 136.) Early the next morning, she was awakened by the sound of Petitioner coming down the stairs. (*Id.* at 138.) Petitioner came over to the couch, jumped on top of Artie, and "[j]ust started stabbing him." (*Id.* at 139.) Sheila jumped up and started screaming for someone to help, and her son Andre came to the room. He grabbed Petitioner and started struggling for the knife. (*Id.* at 140-41.)

Sheila Evans's son, Andre Evans, also testified. He stated that, during the night, he heard a noise, went from the basement up to the kitchen to investigate, and saw Petitioner in the silverware drawer. Petitioner then went back upstairs, and Andre did not see him carrying anything. (*Id.* at 95, 113.) Later, Andre heard shouting, and when he went to the room where Sheila Evans (his mother) and Artie Embry had been sleeping on the couch, he saw Petitioner standing over Embry, and saw a knife in Petitioner's left hand. Andre then engaged in a struggle with Petitioner to attempt to get control of the knife. He stated he was unable to, however, until his brother Keith came into the room to lend assistance. During the

15

struggle, the knife fell to the ground, and someone picked it up and threw it in another room. (*Id.* at 95-100.)

Artic Embry testified that he awoke to the sound of Sheila screaming. He realized he was bleeding, and he felt something sharp in his neck. He couldn't see well because of all the blood on his face, but at that time Andre and Petitioner were "tussling." (*Id.* at 183-84.) Artic never saw who cut him. (*Id.* at 188.)

In his opening and closing arguments, the prosecutor asserted that the intent to kill could be inferred from the nature of the assault, stating: "It's our contention based on the Defendant's actions back on November 25[th] that when you put a knife through a person's throat, that he intended to kill. And when he did it more than one time as far as the cuts, he was intending to kill." (*Id.* at 13.) This argument ran parallel with the jury instructions given on the element of intent: "The Defendant's intent may be proved by what he said, what he did, how he did it, or by any other facts and circumstances in evidence." (Vol. III at 42.) The jury was also instructed on self-defense, specifically that "if a person acts in lawful self-defense, his actions are excused and he's not guilty of any crime." (*Id.*) However, "the Defendant must have honestly and reasonably believed that he was in danger of being seriously injured or killed." (*Id.* at 43.)

In light of the trial record, I suggest that the Michigan Court of Appeals reasonably applied the *Jackson* standard. The evidence put before the jury was that, after the household was asleep, Petitioner came downstairs, stabbed the sleeping victim several times in the presence of an eyewitness, and had to be restrained until the police arrived. There was no

evidence placed before the jury that Petitioner himself was ever in danger of being seriously

injured or killed. Further, on the element of intent, the jury could properly infer from stab

wounds to the head and neck that Petitioner possessed the intent to kill. The Michigan Court

of Appeals reasonably reviewed the record, found sufficient evidence to support all three

elements of the charged offense, and therefore I suggest that Petitioner is not entitled to

habeas relief on this claim.

### 4.   Petitioner's Third Claim: Ineffective Assistance of Counsel

Petitioner next claims that his trial attorney provided constitutionally ineffective

assistance of counsel when he failed to raise the defense of diminished capacity based upon

Petitioner's intoxication and when he failed to communicate clearly with Petitioner regarding

a plea offer.

### a.   State Court Record

These claims were presented to the Michigan Court of Appeals in Petitioner's direct

appeal. The state appellate court ruled on the claims as follows:

> Defendant also argues that he was denied the effective assistance of counsel. We do not agree. To establish a claim of ineffective assistance, defendant must show that counsel's errors were so serious as to deprive defendant of a fair trial. *People v. Mitchell*, 454 Mich 145, 156, 560 NW2d 600 (1997), *Strickland v. Washington*, 466 US 668, 687, 104 S. Ct 2052, 80 L Ed 2d 674 (1984).
>
> Defendant contends that defense counsel was ineffective for failing to assert the defense of intoxication, and for failing to properly advise him of the charges he faced at retrial, leading him to reject a plea offer for a lesser sentence. Defendant did not move for a new trial or an evidentiary hearing, and this Court is limited to the facts that are on the record. Accordingly, defendant's second contention is entirely waived, as there is nothing on the record to indicate that defendant was misinformed of the consequences of

17

rejecting the plea offer. Further, this Court will not substitute its judgment for that of counsel regarding matters of trial strategy, *People v. Barnett*, 163 Mich App 331; 338, 414 NW2d 378 (1987), and decisions as to what evidence to present are presumed to be a matter of trial strategy. *Mitchell, supra*, 163. Based on the facts on record in this case, including defendant's statement to police that he stabbed the victim in self defense, we are not convinced that counsel erred in not submitting an intoxication defense.

(Rule 5 Mat., *People v. Vinson*, No. 198432, at 2 (Mich Ct. App. Sept. 4, 1998) (unpublished per curiam).)

### b.    Evidentiary Hearing

The Michigan Court of Appeals' statement that Petitioner failed to move for an evidentiary hearing is incorrect. Petitioner filed a motion to remand for an evidentiary hearing, which was denied by the Michigan Court of Appeals months prior to its ruling on his direct appeal. (Rule 5 Mat., *People v. Vinson*, No. 198432 (Mich. Ct. App. Dec. 2, 1997).) Noting this error of fact, Judge Lawson ordered this Court to conduct an evidentiary hearing on Petitioner's ineffective assistance of counsel claims. After appointing counsel to represent Petitioner, the hearing was held on September 4, 2003.

At the hearing, Petitioner testified that prior to his trial he raised the possibility of an intoxication defense with Theodore Hentchel ("Hentchel"), his appointed counsel. Hentchel, however, stated that they would assert the defense of self-defense, due to the evidence of a wound on Petitioner's hand. (Evid. Hrng. Tr., Dkt. 29 at 10.) Petitioner obtained records from his prior hospitalizations for mental illness, drug addiction, and alcoholism (*id.* at 11-12), and gave them to Hentchel, but Hentchel told Petitioner that he hadn't used the defense

18

of voluntary intoxication in 17 years of practicing law because it "wasn't a good defense." (*Id.* at 11.)

Regarding the plea offer extended by the prosecutor prior to the second trial, Petitioner stated that he rejected it because Hentchel told him that the jury at the first trial had found him not guilty of assault with intent to murder, and that the hung jury was only with regard to the lesser charge of assault to do great bodily harm. (*Id.* at 16-17.) Therefore, Petitioner, who claims that he was not in the courtroom when the first trial concluded, believed that he would be facing only a charge of assault to do great bodily harm at the second trial, and that, if convicted on that charge, the maximum sentence he could receive would be five and a half to ten years. (*Id.* at 19.) Petitioner testified that Hentchel discussed the plea offer with him, but claims "he just told me that they offered me a three to ten and he never did tell me that it was my best chance to take it." (*Id.* at 19.) Petitioner stated that the first time he realized he was still facing the assault with intent to murder charge was at the end of the closing arguments during the second trial. (*Id.* at 20.)

David Wallace, the assistant prosecuting attorney who represented the State of Michigan during both of Petitioner's trials, also testified at the evidentiary hearing. He recalled that after the first trial ended in a hung jury, the judge and the attorneys had an opportunity to talk with the jury foreperson. The foreperson communicated to them that the jury had reached an 11 to 1 decision on a verdict of guilty of the lesser offense of assault with intent to do great bodily harm less than murder, which was a 10-year felony. One juror,

19

however, refused to deliberate further or discuss his dissenting vote or his reasons for it, and therefore the jury could proceed no further. (*Id.* at 52.)

Mr. Wallace testified that on the morning the second trial was scheduled to begin,[2] he informed Petitioner's counsel that "if you want to plead your client to assault with intent to do great bodily harm, I'm willing to offer that at this point instead of doing a second trial." (*Id.* at 53.) The maximum sentence if Petitioner had accepted the deal would have been six and a half to ten years. The offer was rejected, and they went to trial for the second time. Mr. Wallace stated the charge in his opening statement, and testified that the judge also would have read the charge at the start of the second trial. (*Id.* at 57-58.)

The third and final witness at the evidentiary hearing was attorney Theodore Hentchel, Jr. Hentchel testified that he remembered Mr. Vinson's case "only in the most vaguest sense." (*Id.* at 71.) He explained that in 1996, when Petitioner's two trials took place, he was handling approximately 70 felony criminal cases a year, and that "around that period of time is when I decided that the . . . law had changed so much I no longer wanted to have much to do with it." (*Id.* at 72.) Hentchel expressed his understanding that when a trial ends in a hung jury, there is no legal effect whatsoever, and you start all over. (*Id.* at 76.) He testified that he would not have led his client to believe that he was acquitted of any charges following a trial which ended in hung jury. Hentchel also explained what he would have told a client following a hung jury on a lesser offense, as occurred in this case:

---

[2]Mr. Wallace stated that there is a possibility that this conversation took place at an earlier status conference, rather than on the morning the second trial was to begin.

> If it was 11 to 1 for guilty on a lesser offense, I would urge my client, if the plea offer was to that offense and it was lesser, to take it. Because although you may get out of the higher offense at the next trial, you may not. So - - and by the use of the word "urge" I mean he would be explained, this is what I think is going to happen, this is what I think not's going to happen, this is how it's going to happen, this has been my experience over the years. But it's your decision, you decide what you want to do.

(*Id.* at 77.)

Regarding the defense of voluntary intoxication, Hentchel stated that he never used it in any of his cases because "jurors do not accept that." (*Id.* at 81.) Further, he stated that he has "never known of it being successful," and never known of any attorney in Calhoun County, Kalamazoo County, Kent County, or Ingham County using it successfully. He explained:

> . . . Jurors do not like that. You can kind of move it in and kind of allude to it and kind of that, but to outright come out and tell the jury, I was too drunk to know what I was doing - -
>
> . . . Voluntary intoxication does not work.

(*Id.* at 82.)

### c.   Clearly Established Law

Claims of ineffective assistance of counsel are governed by the U.S. Supreme Court's rule pronounced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The Court in *Strickland* adopted a two-part standard for constitutionally ineffective assistance of counsel: (1) the attorney's performance must have been deficient; and (2) the performance must have prejudiced the defense. *Id.* at 687. In assessing whether counsel's performance was deficient, courts must "recognize that counsel is strongly

21

presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.  Both prongs of the *Strickland* standard must be met in order to prevail on a claim of ineffective assistance of counsel; therefore, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

In *Strickland*, the Supreme Court emphasized that an attorney's representation of a criminal defendant "entails certain basic duties." *Strickland*, 466 U.S. at 688.  In addition to the duties to consult with the client and keep him informed of important developments in the case, counsel has a duty to investigate.  The Court explained:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690-91.

### d.   Discussion – Failure to Present Intoxication Defense

Petitioner's habeas counsel asserts that the writ should issue on this claim because, "despite Petitioner's repeated requests that his attorney use the defenses of intoxication and diminished capacity, his attorney failed in his duty to consider and investigate facts that would support these defenses." (Post-hearing Br., Dkt. 30 at 5.)  He attributes this failure to

22

Mr. Hentchel's large case load, stating that no attorney could adequately represent 70 felony defendants a year. Petitioner's counsel further asserts that voluminous documentary evidence existed that would have established that Petitioner had a history of alcoholism, drug addiction, and mental illness, and that attorney Hentchel should have obtained, reviewed, and used them to show that Petitioner lacked the specific intent required to find him guilty. Further, citing several cases where attorneys were found constitutionally ineffective for failing to investigate, Petitioner's habeas counsel argues that Hentchel's assertion that self-defense was a better defense cannot be credited because "[i]t is clear that Hentchel did not conduct the investigation required to make this determination." (*Id.* at 8.)

Counsel for Respondent counters that, first, although the documentary evidence might have shown that Petitioner had a substance abuse problem, it would not have demonstrated that on the night in question Petitioner was too drunk to form the requisite intent, and second, the record demonstrates that attorney Hentchel's decision not to present such a defense was a strategic one. (Post-hearing Br., Dkt. 33 at 11.) She cites to Mr. Hentchel's own admission of such during the Court's evidentiary hearing:

> Q.     . . . would it be fair to say that if you did not raise the defense of diminished capacity, that that was a part of your trial strategy in this case?
>
> A.     Yeah, I would have to . . . say that.

(Evid. Hrng. Tr. at 82.)

In assessing these arguments under the AEDPA, a habeas court is not permitted to consider what it would do in a similar circumstance. Rather, because the Michigan Court of

Appeals found that counsel's decision not to present an intoxication defense was a matter of trial strategy, this Court's habeas review is limited to determining whether the state court's adjudication of the claim was objectively unreasonable in light of *Strickland*.   *See Washington v. Hofbauer*, 228 F.3d 689, 702 (6th Cir. 2000).  Further, the Court must bear in mind that Petitioner bears the burden of overcoming a strong presumption that, under the circumstances, the attorney's challenged actions might be considered sound trial strategy. *Strickland*, 466 U.S. at 689.

At the evidentiary hearing, attorney Hentchel testified that his decision to proceed at trial with self-defense as the sole theory, rather than asserting a defense of diminished capacity or intoxication, was a strategic decision based upon two things:  one, the fact that Petitioner sustained a wound to his hand during the incident which, it could be argued, was consistent with a defensive wound; and two, counsel's long-standing belief that a diminished capacity or intoxication defense was never used and certainly never successful in Calhoun County, Michigan.  This testimony establishes that the decision was a strategic one which, wise or unwise, was nevertheless based upon Mr. Hentchel's extensive experience as a criminal defense attorney.

Petitioner's argument that Hentchel's strategic decision was not reasonable because it was not based upon sufficient investigation, I suggest, fails to carry the day.  The Supreme Court acknowledged in *Strickland* that "when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether."  *Id.* at

24

691. In this case, Petitioner himself testified that he told Hentchel about his history of hospitalization for alcoholism and mental illness, and even gave Hentchel documents he had obtained from hospitals where he had received treatment. (Tr. at 14-15.) Therefore, Petitioner's own testimony supports the conclusion that Hentchel was aware of facts that could support an intoxication or diminished capacity defense, and yet he chose not to investigate further because of his belief that such a defense could not possibly be successful. Thus, because the evidence demonstrates that his decision was a strategic one based upon knowledge of the facts coupled with twenty years of experience, I suggest that the Michigan court's finding that it was "within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, was not an unreasonable application of Supreme Court precedent.

Accordingly, I suggest that Petitioner is not entitled to a writ of habeas corpus based upon this claim.

e.   **Discussion – Rejection of Plea Offer**

The state court did not analyze the merits of this claim, so this Court must conduct an independent review to determine if the state court outcome was in violation of clearly established federal law. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000), *cert. denied*, 532 U.S. 947, 121 S. Ct. 1415, 149 L. Ed. 2d 356 (2001). *Strickland* again provides the clearly established federal law. If Petitioner can show that the outcome of the state court's adjudication of his claim was obtained in violation of his rights under the United States

25

Constitution as articulated by the U.S. Supreme Court in *Strickland*, Petitioner will be entitled to habeas corpus relief in accordance with the standards set forth in the AEDPA.

Petitioner claims that attorney Hentchel informed him after the first trial's hung jury that he had been acquitted of the 20-year felony, assault with intent to murder, and therefore would only be charged at the second trial with the 10-year felony of assault with intent to do great bodily harm less than murder. Petitioner claims that he turned down offers to plead guilty to the 10-year offense based upon this inaccurate information.

To be entitled to habeas relief on this claim, Petitioner must present evidence to overcome the strong presumption that his trial counsel adequately advised him of the consequences of the hung jury. The evidence he presents, other than his own testimony, is two-fold: letters written by Petitioner between the two trials; and the testimony at the evidentiary hearing of the assistant prosecutor. The letters were written in June of 1996, the month after the first trial. One letter was to the judge, one to the prosecutor, and one to attorney Hentchel. In the letter to the prosecutor, Petitioner asked the following question:

> . . . I would like to know did the jury fine [sic] me not guilty of the assault with intent to murder, because I got 'a hung' jury on assault to do great bodly [sic] harm no less thin [sic] murder. So this is what I'm charged with (Right).

(Rule 5 Mat., Letter dated June 16, 1996, attach. to Mich. Sup. Ct.'s May 25, 1999 Order.) The letter to the judge contained a similar question. Respondent points out that the third letter, the one to Hentchel, contains no such question. Instead, Petitioner stated in that letter, "I am asking you to get me time serve[d] [or] something better than 10 year max . . ." (*Id.*, Letter to Hentchel.)

26

The other evidence Petitioner points to is the testimony of the prosecutor. At the evidentiary hearing, David Wallace stated that when he presented the plea offer to defense counsel, Hentchel's response declining the offer was, "we can get that anyways, since the first jury was already ready to give that to us. Give me something better." (Trans. at 55; quoted in Post-Hrng. Br., Dkt. 30 at 14.) Petitioner claims that this statement attributed to Hentchel supports his claim that he had been erroneously informed that he could do no worse at the second trial than assault with intent to do great bodily harm. I suggest, however, that the most reasonable interpretation of the statement, in light of Hentchel's twenty years of experience as a criminal defense attorney, is that he was saying to opposing counsel, "I already got 11 jurors down to the 10-year felony once, and I can do it again, so offer us something better than that." Further, this response by Hentchel was exactly the response he had been instructed to give by Petitioner in his letter when he asked his attorney to try to get a deal for "something better than 10 year max."

I suggest that the letters and the statement allegedly made by Hentchel fail to overcome the strong presumption that counsel provided adequate assistance. As Respondent points out, no criminal defense lawyer with twenty years of experience would think that a criminal defendant was acquitted by a hung jury, or communicate that to their client. Petitioner may have hoped that it was true, and therefore included the question in his letters to the judge and prosecutor, but as Respondent argues, the fact that he didn't include the same question in the letter to his counsel suggests that he had already been "set straight" by Hentchel on this issue.

Further, Petitioner's assertion that it was not until the closing argument of the second trial that he discovered he was being prosecuted for assault with the intent to commit murder is not believable. The transcript of the second trial shows that prosecutor Wallace stated the following in his *opening* argument:

> First on the assault with intent to murder I have to show that there was an assault, that someone was either put in fear of injury or actually received an injury.
>
> And second, that the Defendant, if he committed the assault, had the ability to cause physical injury.
>
> And third, that at the time he had that ability, he intended to kill.
>
> That's what I have to prove in this case are those three elements.
>
> It is our contention based on the Defendant's actions back on November 25th that when you put a knife through a person's throat, that he intended to kill. And when he did it more than one time as far as the cuts, he was intending to kill.

(Rule 5 Mat., Trial Tr. Vol. 1 at 13.) The prosecutor used the phrase "intent to murder" or "intent to kill" no less than four times in this short passage. In light of this record, it strains the bounds of credulity to believe that Petitioner was shocked to learn in closing arguments that he was facing a charge of assault with intent to murder.

In light of the foregoing, I suggest that Petitioner has failed to carry his burden to show that his trial attorney's performance was so unreasonable that "counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Accordingly, I suggest that Petitioner is not entitled to habeas relief based upon the claim of ineffective assistance of counsel.

28

### 5.   Petitioner's Fourth Claim: Prosecutorial Misconduct

Petitioner's final claim is that the prosecutor committed substantial misconduct when he allegedly misstated the evidence in his closing argument.   (Pet., Dkt. 3 at 41.) Specifically, Petitioner takes issue with the prosecutor's statement that Artie Embry "said he thought at one point he saw someone standing over him." (Trial Tr., Vol. III at 9.) Petitioner claims that this was a mischaracterization of the testimony because, although Embry did at first indicate that he saw Petitioner standing over him, he later admitted that he couldn't actually see anything because of all the blood on his face.[3]  The other allegedly improper argument occurred when the prosecutor paraphrased Sheila Evans's testimony as being, "I wouldn't be just lying to put him away.  I'm here because he dishonored my home, my

---

[3]The exact testimony was as follows:

Q        . . . My question is a simple one, sir.  Do you know who stabbed you?

A        Yeah, Everett stabbed me.

Q        You saw him?

A        Well, I didn't see him, not when he stabbed me.  But if somebody's standing up over you with a knife and you're bleeding, who would you think stabbed you?

Q        You saw him standing over you with a knife?

A        When I came - - you know, for a brief moment, you know, I saw him standing - -

Q        No, sir, I don't.  Did you see him standing over you with a knife?

A        Again, it's hard to see with blood all in your face, you know.

Q        But it's a simple question I asked.  Did you see - -

A        No, I did not.

(Trial Tr., Vol. II at 187-88.)

friends, and my family" (Vol. III at 10), when really what she said on the witness stand was,

"I'm not trying to put nobody in jail just to be there. I went to jail and did my time . . . Why

would I just want to put someone in jail? Just to make Mr. Embry – Mr. Vinson stabbed Mr.

Embry in my house and that's what happened." (Vol. II at 173-74.)

### a.    State Court Record

This claim was presented to the Michigan Court of Appeals in Petitioner's direct

appeal. The state appellate court ruled on the claims as follows:

> Finally, defendant argues that the prosecutor acted improperly during
> the trial and deprived defendant of a fair trial. Appellate review of allegedly
> improper remarks is precluded if the defendant fails to timely and specifically
> object unless an objection could not have cured the error or a failure to review
> the issue would result in a miscarriage of justice. *People v. Stanaway*, 446
> Mich 643, 687, 521 NW2d 557 (1994). We find no miscarriage of justice
> here. Read as a whole, the prosecutor's remarks do not warrant reversal.

(Rule 5 Mat., *People v. Vinson*, No. 198432, at 2 (Mich Ct. App. Sept. 4, 1998) (unpublished

per curiam).)

### b.    Discussion

Respondent asserts that this claim is precluded from habeas review due to Petitioner's

state court procedural default. As explained in relation to the sentencing claim, the first step

of the procedural default analysis is to determine whether there is a state procedural rule that

is applicable to the petitioner's claim and whether the petitioner failed to comply with that

rule. *Maupin*, 785 F.2d at 138. Second, the court must determine whether the procedural

sanction was actually enforced by the state courts – that is, whether the state courts actually

based their decisions on the procedural rule. *Id.*

30

With regard to this claim, these two prongs of the four-pronged *Maupin* test are satisfied. The procedural rule in question here is the requirement that a criminal defendant object to prosecutorial misconduct in order to preserve such a claim for appellate review. *See People v. Ullah*, 216 Mich. App. 669, 676-77, 679, 550 N.W.2d 568, 573-74 (1996) (citing *People v. Van Dorsten*, 441 Mich. 540, 544-45, 494 N.W.2d 737 (1993) and *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994)). It is clear from the state appellate court's opinion that the rule was relied upon to preclude review of the claim, and this conclusion is not negated by the court's finding of no manifest injustice. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989).

Third, the federal court must consider whether the procedural rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim. *Maupin*, 785 F.2d at 138. Petitioner does not dispute that the contemporaneous-objection rule was firmly established and regularly followed with respect to these grounds before his 1996 trial. *See, e.g., People v. Buckey*, 424 Mich. 1, 17- 18, 378 N.W.2d 432, 440 (1985); *People v. Sharbnow*, 174 Mich. App. 94, 100, 435 N.W.2d 772, 775 (1989). Therefore, the state court's reliance on Petitioner's failure to object to the prosecutor's statements is an adequate and independent state ground for foreclosing review. *Luberda v. Trippett*, 211 F.3d 1004, 1006-07 (6th Cir. 2000); *Rogers v. Howes*, 144 F.3d 990, 994 (6th Cir. 1998); *Engle v. Isaac*, 456 U.S. 107, 110, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982) (concluding that a petitioner who fails to comply with a state rule mandating

31

contemporaneous objections to jury instructions may not challenge the constitutionality of those instructions in a federal habeas corpus proceeding).

The fourth prong provides that, if the above three factors are met, which they are in this instance, the Court may still excuse the default and address the merits of the claim if the petitioner can demonstrate that there was cause for him to not follow the state's procedural rule and that he was actually prejudiced by the alleged constitutional error. *Maupin*, 785 F.2d at 138. It is the petitioner's burden to demonstrate both cause and prejudice. *Simpson*, 238 F.3d at 408. In this case, Petitioner makes no attempt to demonstrate cause. Instead, he claims that the contemporaneous objection rule does not apply in his case because the "prosecutor's misconduct was so prejudicial that a curative instruction could not have mitigated its effect." (Pet., Dkt. 3 at 44.) The "misconduct" alleged, however, falls far short of that standard, as neither of the "misstatements" can be characterized as inaccurate paraphrases of the testimony. Accordingly, Petitioner has not met his burden of demonstrating cause and prejudice for his state court procedural default, and therefore his claim is barred from review unless he can show that a miscarriage of justice would result from failure to address the merits of the claim, which, as previously discussed with regard to the sentencing claim, he has failed to do. Accordingly, I suggest that pursuant to the doctrine of procedural default, this claim is foreclosed from habeas review, and the petition should be denied.

32

## III.   **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

CHARLES E. BINDER
United States Magistrate Judge

DATED:  May 28, 2004

Copies to:  Kenneth R. Sasse, Federal Defender Office, 653 S. Saginaw, Ste. 105, Flint, MI 48502-1523
            Janet Van Cleve, Michigan Department of Attorney General, Habeas Corpus Division,
            P. O. Box 30217, Lansing, MI 48909
            Honorable David M. Lawson, United States District Judge

33